Filed 2/4/22  P. v. Cesena CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESUS ARMANDO CESENA,<br><br>    Defendant and Appellant. | E076213<br><br>(Super.Ct.No. FWV17002606)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Shahla Sabet, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Eric A. Swenson, James H. Flaherty III, and Kaleigh L. Ragon, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2017, defendant and appellant Jesus Armando Cesena pled guilty to one count of possession for sale of a controlled substance.  (Health & Saf. Code, § 11351.)  In 2019, he filed a motion pursuant to Penal Code[1] section 1473.7 to withdraw his plea and vacate his conviction on the grounds that his attorney failed to investigate the immigration consequences of his plea, failed to inform him of the actual immigration consequences of his plea, and failed to seek an immigration-safe plea.  The trial court denied the motion.

Defendant appeals, contending his plea counsel provided ineffective assistance of counsel.  Specifically, he faults his counsel for failing to advise him of the specific immigration consequences of his plea and for failing to negotiate a plea bargain with no adverse immigration consequences.  He also argues that he did not have a meaningful understanding of the immigration consequences of his plea.  In addition, defendant claims the court failed to conduct a hearing pursuant to Penal Code section 1473.7 since it prevented him from calling any witnesses, and it also erred by basing its denial, in part, on the weight enhancement.  (Health & Saf. Code, § 11370.4, subd. (a)(1).)  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On June 6, 2017, the Rialto Police Department Narcotics Unit executed a search warrant at a residence.  Prior to the execution of the search warrant, officers observed a white truck driven by defendant leave the location.  The officers followed defendant and

---

[1]  All further statutory references will be to the Penal Code unless otherwise noted.

[2]  The factual background is taken from the police report, which the parties stipulated to be the factual basis for the plea.

observed him meet up with a gray Jeep. He exited the truck, met with the occupants of the Jeep, and then walked back to the truck. He appeared to put an object in the truck bed before driving away. Defendant drove back to the residence, and the police then executed the search warrant. An officer had a narcotics police dog sniff defendant's truck, and the dog alerted him to a tire that was in the truck bed. He cut open the tire and found 15 rectangular objects. The officer cut into one of the objects and observed an off-white substance, which tested positive for cocaine. The combined total weight of the packages was 16,194 grams (approximately 35 pounds). The dog also alerted the police to a container in the residence garage. The container had 3,777.4 grams (over eight pounds) of heroin in it.[3]

On June 29, 2017, defendant was charged by felony complaint with possession for sale of a controlled substance—heroin (Health & Saf. Code, § 11351, count 1), and it was alleged that the substance exceeded one kilogram by weight (Health & Saf. Code, § 11370.4, subd. (a)(1)). The complaint also charged defendant with transportation or sale of a controlled substance—fentanyl (Health & Saf. Code, § 11352, subd. (a), count 2), and another count of possession for sale of a controlled substance—fentanyl (Health & Saf. Code, § 11351, count 3).

On October 3, 2017, defendant entered a plea agreement and pled guilty to count 1, in exchange for a term of three years in county prison and the dismissal of the remaining counts and allegation. Defendant initialed the box next to the statement: "I

---

[3] Some of the substances later tested positive for fentanyl.

3

understand that if I am not a citizen of the United States, deportation, exclusion from admission to the United States, and denial of naturalization may, and for certain offenses will, result from a conviction of the offense(s) to which I plead guilty." Defendant also initialed the box next to the statement: "I have had sufficient time to consult with my attorney concerning my intent to plead guilty/no contest to the above charge(s). . . . My lawyer has explained everything on this Declaration to me, and I have had sufficient time to consider the meaning of each statement. I have personally placed my initials in certain boxes on this Declaration to signify that I fully understand and adopt as my own each of the statements which correspond to those boxes." He further initialed the box next to the statement: "I can read and understand English." Defendant signed his name on the plea form beneath the statement: "I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct . . . ."

Defendant's plea counsel also signed the form beneath the statement: "I am above-named Defendant's attorney in the above-entitled criminal action; that I personally read and explained the contents of the above Declaration to the Defendant; that I personally observed the Defendant sign said Declaration; that I concur in the Defendant's withdrawal of his/her plea(s) of not guilty; and that I concur in the Defendant's plea(s) of guilty/nolo contendere (no contest) and or admissions to the charge(s) as set forth by the Defendant in the above Declaration."

At the plea hearing on October 3, 2017, the court confirmed with defendant that he signed and initialed the plea form after going over everything on the form with his attorney. The court asked if he understood everything on the form, including the

4

potential penalties and punishments for the offense he was pleading to. The following colloquy occurred:

"THE COURT: Have you had enough time with your attorney to discuss this case, including all of your rights, defenses, penalties, and any future consequences that may occur from the plea?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: Okay. And do you understand, finally, if you're not a citizen of the United States consequences of conviction will include deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States? Do you understand that?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: All right. Thank you."

The court also confirmed with counsel that he went over the plea form with defendant and was satisfied that defendant understood everything on the form. The court then found that defendant understood the nature of the charge, the consequences for the charge and his constitutional rights, and that he was knowingly, intelligently, and voluntarily waiving his rights. Defendant then pled guilty to count 1, and the parties stipulated that the police report could be used to establish the factual basis for the plea. The court found that defendant entered his plea freely, knowingly, and intelligently. Pursuant to the plea agreement, the court sentenced him to county prison for three years and dismissed the remaining counts and allegation.

5

On December 4, 2019, defendant filed a motion to vacate his conviction pursuant to section 1473.7. He asserted that he qualified for relief because his plea counsel's representation fell below an objective standard of reasonableness since he did not adequately investigate the immigration consequences of the guilty plea, did not tell him that his plea unequivocally would result in deportation, and did not attempt to obtain an immigration-safe plea bargain. Defendant further argued that he was prejudiced because had he been told he would be deported, he would not have pled guilty. He would have instead asked to seek an immigration-safe plea and "done more days of jail," or gone to trial.

In support of the motion, defendant submitted a declaration from his current attorney affirming that his current attorney was informed plea counsel had passed away, that he was unable to obtain defendant's client file, and that he was informed the file may have been destroyed. Defendant also attached exhibits, including a copy of the complaint, a copy of his plea agreement, a copy of the minute order from the plea hearing, a copy of the reporter's transcript from the plea hearing, a copy of a notice to appear from the Department of Homeland Security saying he was subject to removal because of his conviction, a copy of his marriage license, copies of his children's birth certificates, support letters, a copy of his resume, and a copy of his tax returns. Defendant submitted declarations from two purported law experts, explaining immigration law and criminal defense, as well as declarations from his sister, wife, and brother-in-law.

Defendant also submitted a declaration stating he was a Mexican citizen and legal permanent resident of the United States (he gained status through his wife), he had lived in the United States since he was eight years old, he attended schools here and obtained his GED, he had four children who were United States citizens, he had paid taxes since 2010, and he was currently detained in immigration custody. Defendant said his plea counsel told him that going to trial was a risk. Counsel said defendant would be looking at maybe nine years in prison, and he would be sent to a state prison that would probably be far from his family. Counsel said he could try to work out a deal where defendant would do less time in county jail so his family could visit him. Defendant said he asked his counsel, "how this would affect [his] greencard because [he] was [a] legal permanent resident." Defendant said his counsel told him he was not an immigration attorney and did not know, and that they needed to "work out the criminal case first, and then worry about the immigration case." Subsequently, his counsel said he got the prosecutor to agree to dismiss some of the charges and that defendant would serve three years instead of nine. Counsel said this was the best he could do for him. Defendant agreed to take the deal. He filled out some paperwork, and counsel told him where to sign and initial. Defendant stated in his declaration that he wished he had used a translator, alleging that even though he spoke English because he had lived in the United States since he was a kid, Spanish was his "best language."

Defendant said they then went back to court, and he pled guilty. In his declaration, defendant stated, "I remember the judge asking me if I understood everything. Everything happened so fast." Defendant also said he signed a felony plea

7

form and stated, "I do see that there is a line that said that certain convictions may result in deportation and other convictions would result in deportation if you are a non-Citizen." He also declared, "I do remember the judge telling me in court that with this crime I would be deported. I thought he was just going over the paperwork on the forms. It doesn't make sense to me that he told me then I would be deported, or denied naturalization or not be able to be admitted to the United States because of this crime, because he had just told me that I wasn't going to be on probation or parole." Defendant also said he would not have taken the deal if his counsel had told him he would be deported and separated from his family.

The prosecutor filed an opposition to defendant's motion to vacate, contending the record established that plea counsel and the court told defendant that if he pleaded guilty, he would face deportation, exclusion from admission to the United States, and denial of naturalization due to his conviction. The prosecutor also argued that the declarations submitted by defendant and his family members were not credible but were speculative and should be rejected as self-serving and unreliable, or inadmissible as hearsay. The prosecution further argued that there was no prejudice, since there was no contemporaneous evidence that deportation was the determinative issue in defendant's decision whether or not to plead. The asserted prejudice was "nothing more than the Defendant choosing to ignore the accurate advisements he received in court." Despite knowing he could be deported, defendant "chose to believe it would not happen to him." Additionally, the prosecution argued that defendant had no reason to believe the charge would allow an immigration-neutral deal. He was found with over 40 pounds of heroin

8

and fentanyl, thus showing he was a major narcotics trafficker who was not going to receive more favorable treatment in his plea bargain.

On August 14, 2020, the court held a hearing on the motion. The court stated that it reviewed the moving and opposing papers, along with the declarations submitted, and it noted that it presumed the declarations admissible and considered each declaration with a "different amount of veracity or credibility." The court noted that it would accept all the declarations, even though the prosecutor objected, and that it would have to evaluate credibility. Defense counsel stated defendant was entitled to a hearing by statute. The court agreed he was entitled to a hearing, but said the issue was who defendant could call to testify. The court stated that it would permit percipient witness testimony, as long as it was not cumulative to the contents of the witness's declaration. Otherwise, only the prosecutor could call the witnesses, who had submitted declarations, to cross-examine them or question their credibility. The court also stated that if defense counsel had any new witnesses or information the court did not have by way of declaration, it would allow counsel to call such witnesses.

The court stated its tentative decision was to deny the motion. On the ineffective counsel grounds, the court intended to deny the motion since it did not have a declaration from plea counsel, and he could not testify as to what transpired. Rather, the court said it only had the self-serving declaration of defendant that accused an attorney who was deceased of doing something the court did not know in fact occurred. The court noted that the accusations were not supported by the discussions in court between defendant and the judge. It noted that numerous defendants in these cases would come back and

9

claim, for example, lack of understanding of the language. However, defendant had been here since he was eight. It also noted that the attorney in this case had practiced criminal law for years. Thus, the court did not have sufficient evidence to find ineffective assistance of counsel. As to prejudice, the court noted that the amount of drugs involved was very large; thus, there was not much a defense attorney could do to save a client from immigration consequences, especially in light of the fact that the judge "very clearly on the record" asked defendant if he understood he would be deported, and defendant said yes. The court also confirmed that defendant had enough time to talk to his lawyer, and his lawyer explained everything to him. The prosecutor reiterated that defendant was told he could be deported, and he said he understood. The prosecutor also noted that defendant was "not going to be done . . . any favors based on his own conduct," since he appeared to be "a major narcotics trafficker, not merely a street-level dealer moving small amounts of drugs." The court then noted that the fact that plea counsel was deceased put it "in a binding position." It specifically put on the record that "because he's not available and deceased, the defendant and/or his supporters can say anything they want because he's not here to defend himself." The court ultimately denied the motion.

DISCUSSION

### I. Defendant Has Failed to Establish He Is Entitled to Relief

Defendant argues the court's denial of the motion to vacate his conviction should be reversed. He contends the evidence he presented established that he, through his own error or his attorney's error, failed to meaningfully understand the immigration

10

consequence of his plea was mandatory deportation. We conclude the court properly denied the motion.

A. *The Court Held a Hearing and Permitted Defendant to Call Witnesses*

At the outset, we note defendant's claim that the trial court committed reversible error by denying his section 1473.7 motion without an evidentiary hearing. He claims the court stated the prosecution, but not the defense, was entitled to call witnesses, and it limited defense counsel to the declarations and supporting documents in the petition. The record does not support this claim, and defendant's argument mischaracterizes the court's ruling on this issue.

Section 1473.7, subdivision (d), provides that "[a]ll motions shall be entitled to a hearing." The court here held a hearing on the motion. Contrary to defendant's claim, the court did not state that only the prosecution and not the defense was entitled to call witnesses. The court expressly said the defense could call witnesses, as long as their testimony was not redundant or cumulative. Defendant filed a voluminous motion, with declarations and exhibits, and the court had reviewed everything. The court initially stated that his motion was "not entitled to a hearing, unless [he had] witnesses that were percipient. . . . [¶] Otherwise, for individuals coming and rendering opinion, [he] already submitted declarations." When defense counsel argued that defendant was entitled to a hearing according to the statute, the court clarified, stating, "Yes. You're entitled to a hearing, but who can you call? That's the issue I'm talking about." When defense counsel named the witnesses he wanted to call, the court asked what they would testify to that was not in their declarations. The court stated, "if you have new witnesses, new

11

information that I don't have it by way of declaration, I will certainly allow you to call [them]."

Defendant cites *People v. Rodriguez* (2021) 60 Cal.App.5th 995 (*Rodriguez*), *People v. Ruiz* (2020) 49 Cal.App.5th 1061 (*Ruiz*) and *People v. Fryhaat* (2019) 35 Cal.App.5th 969 (*Fryhaat*), in support of his position. However, these cases are distinguishable. Defendant cites *Rodriguez* to show that the "court conducted [an] evidentiary hearing at which defense witnesses testified." However, in that case, the court took testimony from three defense witnesses—the defendant and the two public defenders who represented him. The defendant apparently did not file written declarations from the two public defenders with his section 1473.7 motion to vacate, so the testimony they gave presented new evidence. (*Rodriguez*, *supra*, 60 Cal.App.5th at pp. 999-1001.) In the instant case, defendant wanted to have his sister and an immigration expert testify. However, both witnesses had already submitted written declarations, and their testimony would have been cumulative to what defendant had already submitted with his motion.

In *Ruiz*, the trial court barred the defendant's section 1473.7 motion since she had lost a prior 2017 motion to vacate that contained a reference to the 2017 version of section 1473.7. The appellate court ruled this was error since the motion was based on the 2019 version of the statute and was therefore not the same motion. Thus, the appellate court reversed and remanded the matter for the court to consider the motion on the merits. (*Ruiz*, *supra*, 49 Cal.App.5th at pp. 1068, 1070.) In *Fryaat*, the trial court summarily denied the defendant's section 1473.7 motion without a hearing, without his

12

presence, and without appointed counsel. (*Fryhaat*, *supra*, 35 Cal.App.5th at p. 975.) Thus, this court reversed the denial and remanded with directions to evaluate the defendant's request for appointment of counsel, to appoint counsel if appropriate, and to consider the motion on its merits. (*Id*. at p. 984.) Neither *Ruiz* nor *Fryhaat* support defendant's claim that the trial court's denial here must be reversed and the matter remanded for another hearing. Contrary to defendant's arguments, nothing in the statute expressly sets forth the scope of the hearing required. The court here properly held a hearing, heard from all relevant witnesses (through their declarations), offered to hear from any additional witnesses from either side, and considered the motion on the merits.

Moreover, even if the court erred in not allowing live testimony, any error was harmless since the court had already accepted testimony from the proffered witnesses through their declarations, which were not scrutinized by vigorous cross-examination. We see no reasonable possibility that the result would have been different with live testimony restating what was already in the declarations. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

B. *Standard of Review*

We apply the independent standard of review to an order denying a motion to vacate a conviction under section 1473.7. (*People v. Vivar* (2021) 11 Cal.5th 510, 524-528 (*Vivar*).) "In section 1473.7 proceedings, appellate courts should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses. [Citation.] Where, as here, the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special

13

purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id.* at pp. 527-528, fn. omitted.)

C. *Defendant Has Failed to Establish Ineffective Assistance of Counsel*

Section 1473.7, which became effective on January 1, 2017, provides that a person who is no longer imprisoned may move to vacate a judgment if the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).) Thus, a defendant is required to demonstrate that he or she suffered prejudicial error. (*Ibid.*) "The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (§ 1473.7, subd. (e)(1).)

"Ineffective assistance of counsel that damages a defendant's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a guilty plea, if established by a preponderance of the evidence, is the type of error that entitles the defendant to relief under section 1473.7. [Citation.] To establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that he was prejudiced by the deficient performance."

14

(*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 75; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)  We note that in 2018, the following language was added to section 1437.7, subdivision (a)(1): "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."  (See *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133.)

      1.  *Defendant has failed to establish his counsel's performance was deficient*

Defendant claims his counsel failed to inform him that, as a result of his plea to possession for sale of a controlled substance, the immigration consequences were mandatory deportation, no reentry to the United States, and no naturalization.  He further claims his counsel failed to investigate the impact of the plea on his immigration status and did not attempt to negotiate an immigration-safe plea and have him plead to a non-deportable offense or delete the drug name from the record of conviction to render him undeportable.  Defendant specifically claims his counsel told him he would be out of custody and back with his family sooner if he took the plea deal and misadvised him that he needed to work the criminal case out first, and then worry about the immigration case later.  Defendant claims he was prejudiced since he would not have pled guilty if he had understood he was subject to mandatory deportation and would be unable to return to the United States, thereby separating him from his family, job, and country.

Defendant failed to meet his burden of establishing by a preponderance of the evidence any prejudicial error on plea counsel's part that damaged his ability to understand, defend against, or knowingly accept the immigration consequences of his plea.  (§ 1473.7, subds. (a)(1) & (e)(1).)  We note the ease with which a defendant may

15

claim his counsel erred. (See *In re Alvernaz* (1992) 2 Cal.4th 924, 938.) However, "[a]n allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting appellant's claimed failures." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223-224.) Thus, defendant's claims require "corroboration and objective evidence because a declaration by defendant is suspect by itself." (*Id.* at p. 224.) "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee v. United States* (2017) __ U.S. __ [137 S.Ct. 1958, 1967]; see *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 ["[i]n a postconviction setting, courts should not simply accept a defendant's statement of regret regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences.' "].)

Defendant has presented no such objective, corroborating evidence here. The only relevant evidence he offers is his self-serving declaration and the declarations of his wife, sister, and brother-in-law. Generally, self-serving declarations lack trustworthiness. (*People v. Duarte* (2000) 24 Cal.4th 603, 611.) In other words, we are not bound to give full credence to the statements in defendant's declaration because of his obvious interest in the outcome of the proceeding, and we would say the same about statements by his wife, sister, and brother-in-law. (See *People v. Beck* (1961) 188 Cal.App.2d 549, 553.) Moreover, we agree with the trial court's assessment that defendant and his supporters could say anything they wanted "because [plea counsel was] not here to defend himself."

16

We realize that defendant was unable to obtain a declaration from his plea counsel since counsel passed away, and that defendant was unable to obtain counsel's case file. However, the unfortunate circumstance of his plea counsel's passing does not relieve defendant of his burden of proof. (§ 1473.7, subd. (e)(1).)

Furthermore, we find defendant's statements in his declaration that he pled guilty not knowing he would be deported not credible in light of the signed plea agreement and the court's own taking of his plea. Defendant initialed the box next to the statement in the plea agreement stating: "I understand that if I am not a citizen of the United States, deportation, exclusion from admission to the United States, and denial of naturalization may, and *for certain offenses will*, result from a conviction of the offense(s) to which I plead guilty." (Italics added.) Defendant initialed the boxes verifying that his attorney explained everything in the agreement to him, and he fully understood everything. The record also shows that when the court was taking his guilty plea, it specifically told defendant that his conviction would result in deportation. The court said, "And do you understand, finally, if you're not a citizen of the United States consequences of conviction *will* include deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States? Do you understand this?" Defendant said, "Yes, your Honor." Furthermore, in defendant's declaration, he expressly conceded, "I do remember the judge telling me in court that with this crime I would be deported." Additionally, the court confirmed with plea counsel that he went over the form with defendant, and defendant understood everything on it. The court found that defendant read and understood the form, understood the charge to which he

17

was pleading and the consequences for the charge, and was freely and knowingly entering the plea.

Next, we turn to defendant's argument that his plea counsel ineffectively represented him by failing to make a counter offer or negotiate an immigration-safe plea deal. He specifically claims his counsel should have attempted to negotiate an immigration-safe plea "by pleading to a different offense [that was non-deportable], or by striking the name of the drug from the record of conviction in a *Paulus*[4] defense and not stipulating to the police report as a basis for the guilty plea to render the plea immigration safe." *People v. Perez* (2018) 19 Cal.App.5th 818 (*Perez*) is instructive in this regard. In that case, as in this one, there was "no indication in the record that the prosecution was willing to agree to an immigration safe disposition. Similarly, there [was] no suggestion that [the defendant's] counsel did not attempt to negotiate such a disposition." (*Id.* at p. 830.) Because "[a]n appellant has the burden of establishing, based on the record on appeal and based on facts, not speculation, that counsel rendered ineffective assistance of counsel," the lack of any evidence regarding counsel's negotiations or lack thereof was fatal to the defendant's attempt to vacate his conviction on those grounds. (*Ibid.*)

The same is true here. Defendant only speculates, with no corroborating evidence, that his plea counsel did not attempt to secure an immigration-safe plea and that the prosecutor would have agreed to such. Defendant offered this speculative statement in his declaration: "*I don't think* [my counsel] made any immigration safe plea offers

---

**4** *Matter of Paulus* (B.I.A. 1965) 11 I. & N. Dec. 274 (*Paulus*).

18

because he didn't know about immigration . . . ." (Italics added.) Defendant also presented declarations by two putative experts that an immigration-safe plea *might* have been available. We note that one of the expert's declarations was based on his review of the other declarations submitted with the motion, which were suspect. (See *ante*.) Moreover, the mere fact that immigration-safe pleas have been negotiated in other cases, or that one might have existed here, is not evidence that plea counsel failed to negotiate for such a plea.

Additionally, in this case, it is clear that counsel negotiated for the best disposition that he could get. Counsel was able to secure a plea in which defendant was permitted to plead to only one count of three very serious charges and had a significant weight enhancement dismissed as part of the agreement. With over 40 pounds of heroin and fentanyl, it is difficult to imagine any non-deportable offense that defendant would be permitted to plead to in lieu of the charged offenses. Furthermore, there was no indication in the record that the prosecution was willing to agree to an immigration-safe plea. (*Perez*, *supra*, 19 Cal.App.5th at p. 830.) In fact, the prosecutor at the motion hearing suggested the opposite. Although the prosecutor did inform the court that he had no information of any counteroffers made (e.g., in the district attorney's case file), he also said that defendant "was not going to be done . . . any favors" in this case based on the severity of the charges and the fact that he "appeared to be a major narcotics trafficker, not merely a street-level dealer moving small amounts of drugs."

Citing *Paulus*, *supra*, 11 I. & N. Dec. 274, defendant contends his counsel should have attempted to negotiate to strike the name of the drug from the record of conviction

19

and not stipulate to the police report as a basis for the guilty plea in order to render the plea immigration safe. However, this claim lacks merit. In *Paulus*, an alien was convicted of violating a California statute that made it a crime to " 'offer unlawfully to sell and furnish a narcotic . . . and . . . then sell and deliver . . . a substance . . . in lieu of such narcotic.' " (*Paulus*, *supra*, 11 I. & N. Dec. at p. 275.) Noting "the record being silent as to the narcotic involved in the conviction" and the fact California's definition of "narcotic" differed from that under federal law, the Board of Immigration Appeals upheld an order terminating deportation proceedings because "it [could not] be said for immigration purposes, that [the defendant] has been convicted of a law relating to narcotic drugs." (*Ibid.*)

*Paulus* involved a factual dispute over the nature of the drug the alien had been selling or furnishing. In contrast, defendant here was charged with crimes specifically identifying the controlled substances as heroin and fentanyl. Moreover, defendant presented no evidence that simply striking the name of the drugs involved here would have protected him from being deported, or that the prosecution would have agreed to strike the name of the drugs from the record.

2. *Defendant has failed to establish prejudice*

Even assuming his counsel did err in his representation, defendant has failed to establish that he was prejudiced. He argues that he would not have taken the plea deal if he had known the consequence of eventually being deported because of his four children, his home, and his life in the United States. Defendant's declaration contains the only direct evidence presented as to whether he would have taken the plea had he been aware

20

of the immigration consequences.  However, " 'a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted [or rejected] a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence.' "  (*People v. Bravo* (2020) 58 Cal.App.5th 1161, 1171, overruled in part on other grounds, as stated in *Vivar*, *supra*, 11 Cal.5th at p. 526.)  We note defendant did not state in his declaration that he told his plea counsel his priority was to remain in the United States with his family and job, in order for his counsel to try to mitigate the consequences of the plea.

Defendant did state in his declaration that he would not have accepted the plea deal if he knew he was going to be deported, and he "would have gladly done more days of jail" or "even risked going to trial."  First, defendant did know that he would be deported because the court expressly told him so.  Second, defendant's statement lacks credibility.  Defendant was charged with two counts of possession for sale of a controlled substance—heroin (Health & Saf. Code, § 11351, counts 1 & 3), and it was alleged in count 1 that the substance exceeded one kilogram by weight (Health & Saf. Code, § 11370.4, subd. (a)(1)).  Thus, he would have been facing a maximum sentence of nine years.[5]  The evidence against him was strong, as the police found him in possession of

---

[5]  A person convicted of possession for sale of a controlled substance is subject to imprisonment for two, three, or four years.  (Health & Saf. Code, § 11351.)  A person convicted of transportation or sale of a controlled substance is subject to imprisonment for three, four, or five years.  (Health & Saf. Code, § 11352, subd. (a).)  A person convicted of a violation of Health and Safety Code section 11351, where the substance

*[footnote continued on next page]*

21

over 40 pounds of drugs. Pursuant to the plea agreement, defendant pled guilty to count 1, in exchange for a term of only three years in county prison and the dismissal of the other counts and the weight enhancement.

Under these circumstances, although it is possible, it is not likely he would have risked going to trial, being convicted of all counts, and facing a lengthy prison term as well as the same immigration consequences.

D. *Defendant Has Failed to Establish His Own Misunderstanding*

To the extent defendant is contending he is entitled to relief due to his own lack of understanding, apart from any error by his counsel, we disagree. He claims "the declarations, plea form, and plea transcripts showed by a preponderance [he] did not meaningfully understand the adverse immigration consequences of his plea." However, for the same reasons discussed *ante*, we conclude the record belies his claim. (See § *I.C.1.*, *ante*.) Defendant signed the plea agreement, and he was advised in open court that his conviction in this case would result in deportation. Moreover, as the court observed, he clearly understood English.

Defendant claims he was confused by the circumstances. In his declaration, he stated, "I do remember the judge telling me in court that with this crime I would be

---

exceeded one kilogram, would receive an additional three years. (Health & Saf. Code, § 11370.4, subd. (a)(1).) Defendant could receive up to five years for the Health and Safety Code section 11352 violation. Defendant could receive one-third the midterm for one of the Health and Safety Code section 11351 violations, which would add one additional year. Finally, defendant was subject to an additional three years for the weight enhancement. This assumes that one of the Health and Safety Code section 11351 violations would be subject to Penal Code section 654.

22

deported." He further said he thought the judge was "just going over the paperwork" and alleged that it "[didn't] make sense to me that he told me then I would be deported, or denied naturalization or not be able to be admitted to the United States because of this crime, because he had just told me that I wasn't going to be on probation or parole." However, defendant did not ask the court any questions or express any confusion, but rather confirmed that he understood the consequences of his plea.

Defendant also asserts that he had signed "a similar plea form in 2008 when charged with a DUI, the charge was reduced, and he was not deported," and that this circumstance "add[ed] to [his] confusion." However, again, defendant did not express any confusion to his counsel or the court before signing the plea agreement in the current case, and he assured the court he understood the agreement he was entering and the consequences of that agreement.

Defendant further claims he was confused because, after he entered the plea, he was allowed to complete a job assignment before he went to jail, pursuant to a deal his counsel worked out. He also traveled to Mexico following the plea and was let back into the United States without issue, and he applied for a replacement green card. However, these circumstances occurred *after* he pled guilty. Thus, they had no bearing on his claimed lack of understanding or confusion about the immigration consequences of his plea, at the time he entered his plea.

We conclude that defendant failed to meet his burden of establishing by a preponderance of the evidence that his plea counsel rendered ineffective assistance or that he (defendant) did not understand the immigration consequences of the plea. Because

defendant failed to meet his burden of proof, the trial court properly denied the section 1473.7 motion.

We briefly note defendant's additional claim that the court erred by denying the motion to vacate, in part, on the ground that there was a large quantity of drugs, since the weight enhancement (Health & Saf. Code, § 11370.4) was dismissed as part of the plea agreement. This claim lacks merit because the record shows the court based its denial on the lack of evidence to prove ineffective assistance of counsel, and the record showed defendant understood the consequences of his plea. The court commented that with this type of case, there was little a defense attorney could do to "save the client from immigration consequences," and it specifically noted that "the Judge very clearly, very clearly on the record" told defendant that he would be deported, and defendant said he understood.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____<br>J.

We concur:

RAMIREZ _____
P. J.

MENETREZ _____
J.